IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MMM HEALTH CARE, INC., et al.,

        Plaintiffs

        v.

MASS MEDIA PR, INC., et al.,

        Defendants

CIVIL NO. 09-1693 (JP)

## OPINION AND ORDER

Before the Court is Defendant Vilmary Caraballo's ("Caraballo") partial motion to dismiss (**No. 20**), Plaintiffs' opposition (No. 22), Caraballo's reply (No. 32), and Plaintiffs' sur-reply (No. 34). Plaintiffs brought the instant action alleging that Defendants breached an agreement with Plaintiffs. For the reasons stated herein, Defendant's partial motion to dismiss is hereby **DENIED.**

## I.   FACTUAL ALLEGATIONS

On or about October 2007, Plaintiffs MMM Health Care, Inc. ("MMM") and Preferred Medical Choice, Inc. ("PMC") retained, through Defendant Hector Alemán ("Alemán"), the services of Defendant Mass Media PR, Inc. ("Mass Media") in order to handle and ship a number of mailings. Plaintiffs MMM and PMC contracted with Defendant Mass Media to handle and ship "Explanation of Benefits, Changes in Benefits and Medical Insurance Card" mailings in the amounts

CIVIL NO. 09-1693 (JP)            -2-

of 119,641 for the period of October 2007, 115,886 for the period of November 2007, and 114,421 for the period of December 2007.

In 2008 and as part of the ongoing business relationship with Plaintiffs, Mass Media, through Defendant Alemán, presented Plaintiffs with purchase order No. PO6138 in the amount of $164,402.97.  In response to said purchase order, MMM issued check No. 020852 to cover postage.  Plaintiff MMM issued another check, No. 021662, in the amount of $61,756.51 covering the remaining balance of $47,814.44 and to cover an additional invoice by Defendant Mass Media, for additional postage, in the amount of $13,942.07.

Defendant Mass Media, through Defendant Alemán, presented Plaintiff MMM with another invoice, No. 25479, for $51,681.92 pertaining to the "Explanation of Benefits, Changes in Benefits and Medical Insurance Card" mailings.  Said mailings totaled 114,069 for the covered period of January 2008 and totaled 164,561 for the consolidated covered period of February 2008 to May 2008, which were prepared for delivery on or about June 13, 2008.  Plaintiff MMM issued check No. 023280 for a total of $79,882.16, which included $65,846.02 for first class postage.  All mailings and handling of the "Explanation of Benefits, Changes in Benefits and Medical Insurance Card" mailings totaled $309,909.12.

Defendant Mass Media prepared and provided Plaintiffs MMM and PMC material pick up receipts that represented the pickup of MMM and PMC's "Explanation of Benefits, Changes in Benefits and Medical

CIVIL NO. 09-1693 (JP)          -3-

Insurance Card" mailings to its clients.  Said receipts demonstrated that Mass Media did receive the mailings from both MMM and PMC. However, a review of Plaintiffs' "Explanation of Benefits, Changes in Benefits and Medical Insurance Card" customer listings calls/inquiries/complaints revealed that not one customer had made any inquiries, or called for further explanation or clarification.

On or about July 2008, Plaintiffs requested from Defendant Mass Media evidence of delivery of the "Explanation of Benefits, Changes in Benefits and Medical Insurance Card" mailings to the United States Postal Service Business Mail Entry unit.  Mass Media then provided copies of four Postal Service "Statement of Mailings" forms that were allegedly sent and received by Miguel Martínez-Pérez, Mail Room Supervisor.

On August 14, 2008, the Compliance Department of Plaintiff MMM commenced an investigation into the conduct of Mass Media's billing practices.  Further inquiry with the United States Postal Service revealed that the forms provided by Defendant Mass Media to Plaintiffs establishing that it had indeed performed the mailings were altered to purport a legitimate mailing but that such mailings were never received or recorded by the United States Postal Service.

A statistical sampling of Plaintiffs' beneficiaries was performed and the same revealed that none of the beneficiaries received correspondence from MMM or PMC during the period in which Defendant Mass Media was to perform the mailings.  Also, the

CIVIL NO. 09-1693 (JP)          -4-

investigation revealed that Defendant Mass Media not only charged
Plaintiffs for services it never performed, but, in addition,
forwarded the material received from MMM and PMC to a paper recycling
company for which it received remuneration at the expense of
Plaintiffs.

On or about January 8, 2009, Plaintiffs received notification
from the United States Postal Service that they had been the possible
victims of an alleged federal crime.  Defendants Mass Media, Alemán,
Juan Rivera, John Doe and Richard Roe, the latter two fictitious
names representing the individuals that conspired with the other
Defendants, deprived Plaintiffs of the honest services to which they
were entitled and the amounts of money paid for said services.

Plaintiffs then filed the instant complaint on July 22, 2009
(No. 1).  In said complaint, Plaintiffs bring claims against Alemán
and the conjugal partnership of Alemán-Caraballo.

## II.  <u>LEGAL STANDARD FOR A MOTION TO DISMISS</u>

According to the Supreme Court, "once a claim has been stated
adequately, it may be supported by showing any set of facts
consistent with the allegations in the complaint." <u>Bell Atl. Corp.
v. Twombly</u>, 127 S. Ct. 1955, 1969 (2007).  As such, in order to
survive a motion to dismiss, a complaint must state a claim to relief
that is plausible on its face, not merely conceivable.  <u>Id.</u> at 1974.
The Court of Appeal for the First Circuit has interpreted <u>Twombly</u> as
sounding the death knell for the oft-quoted language of <u>Conley v.</u>

CIVIL NO. 09-1693 (JP)          -5-

Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct. at 1969.  Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff."  Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

## III. **ANALYSIS**

Defendant Caraballo, as wife of Defendant Alemán, moves for the Court to dismiss Plaintiffs' complaint against her, arguing that she and Defendant Alemán signed a valid prenuptial agreement and, as such, there is no legal partnership between Defendants Caraballo and Alemán.

Plaintiffs oppose said motion, arguing that Defendant's motion should be denied because Defendant has not shown that the prenuptial agreement was signed prior to the marriage.  Also, Plaintiffs argue that, even if the prenuptial agreement was signed prior to the marriage, the claims against Caraballo should not be dismissed because Defendant has refused to declare under oath that: (1) she did not participate in the acts alleged in the complaint; (2) she has lived in strict separation of assets during her marriage with Alemán; and (3) she has no knowledge of the businesses and assets of her

CIVIL NO. 09-1693 (JP)          -6-

husband related to the allegations in the complaint.  The Court will now consider the parties' arguments.

### A.   **Prenuptial Agreement**

Defendant Caraballo argues that she signed a prenuptial agreement with Defendant Alemán on November 6, 2002 where they agreed to separately maintain all their respective present and future property.  In support of said allegation, Defendant submitted the prenuptial agreement.  Also, Defendant argues, without providing any supporting evidence, that she married Alemán on November 8, 2002.

The Puerto Rico Supreme Court has made it clear that for a prenuptial agreement to be valid it must be signed prior to the marriage.  Maldonado v. Cruz, 161 D.P.R. 1, 18-19 (2004); see also P.R. Laws Ann. tit. 31, §§ 3555-3557.  In the instant case, the prenuptial agreement establishes that it was created on November 6, 2002.  However, Defendant Caraballo has provided no support, except her arguments in her reply (No. 32), that the prenuptial agreement was signed prior to the marriage.  Since Defendant has not provided any documents or other evidence supporting her claim that the marriage occurred on November 8, 2002, the Court hereby **DENIES** the motion at this stage in the proceedings.[1]  At summary judgment, if Defendant Caraballo wishes to do so, she may again raise this

---

1.   Defendant Caraballo also raises additional arguments regarding opposing counsel's promises. The Court will not entertain said arguments as they are irrelevant to the issue of whether the prenuptial agreement was properly created.

CIVIL NO. 09-1693 (JP)          -7-

argument with all the required documentation and/or other additional

evidence to prove all the elements of a valid prenuptial agreement.

    Also, the Court notes that, based on the Court's resolution of

the prenuptial agreement issue, it is unnecessary for the Court to

consider the other arguments raised by Plaintiffs.

**IV.**   **CONCLUSION**

    Thus, the Court **DENIES** Defendant Caraballo's motion to dismiss.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, this 31st day of March, 2010.


                              s/Jaime Pieras, Jr.
                               JAIME PIERAS, JR.
                         U.S. SENIOR DISTRICT JUDGE